IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:23-CR-212** |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **GEORGE COSTAS SKOURAS,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant George Costas Skouras moves the court to suppress evidence obtained during a search of his property. He also requests an evidentiary hearing. We will deny the motion.

## I.   Factual Background[1]

On January 20, 2022, police searched 1357 Canterbury Lane, Springettsbury Township, York County, Pennsylvania, a property comprised of a residential home, an attached garage, and a backyard that is viewable from Arsenal Road, a publicly accessible street abutting the property. (See Doc. 45-1 at 2, 5). The search was based on a warrant signed by York County Magisterial District Judge Barry L. Bloss, Jr., on January 20, 2022, which sought, among other items, marijuana "along with any other drugs or paraphernalia[] used in the process of cultivating, harvesting, and packaging marijuana," including, but not limited to, ventilation and water irrigation systems, fertilizers, fans, lights, heaters, solar panels, generators, Ohm meters, and related growth rate, maturity rate, and yield documentation. (See

---

[1] The following factual narrative derives from the affidavit of probable cause, (see Doc. 45-1), along with Skouras's Motion (Doc. 37) and the government's brief in opposition to the motion (Doc. 45).

id. at 2). The warrant covered the home, the attached garage, and all curtilage associated with the property. (See id.) Springettsbury Township Police Detective Russell Schauer, III, prepared the affidavit of probable cause. (See id. at 4-8). Officer Schauer and other officers executed the warrant and seized marijuana, psilocyn mushrooms, ketamine, MDMA, MDA, pill presses, several firearms, ammunition, a bump stock, grenade launchers, sear pins, gas masks, body armor, and a purported pipe bomb. (See Doc. 27 ¶¶ 12-13; see also Doc. 45 at 8). The foregoing materials formed the basis of the instant charges.

The affidavit of probable cause for the 1357 Canterbury Lane warrant was based in significant part on complaints Springettsbury Township Police received from neighbors between June 2020 and January 2022 and on observations made by the police. (See generally Doc. 45-1). We will discuss the contents of the affidavit in more detail below.

## II. Procedural History

On August 9, 2023, a federal grand jury returned a seven-count indictment charging Skouras with possession with intent to distribute marijuana, psilocyn, MDMA, and MDA, 21 U.S.C. § 841(a), (b)(1)(C) (Counts 1, 2, 3, and 4); maintaining a drug premises, id. § 856 (Count 5); possession of a pipe bomb, 26 U.S.C.§ 5861(d) (Count 6); and possession of firearms in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1) (Count 7). (See Doc. 1). Skouras pled not guilty, (see Doc. 12), and moved, through counsel, to suppress evidence under the Fourth Amendment, (see Doc. 37). The motion is fully briefed and ripe for disposition.

### III. Discussion

The crux of Skouras's argument is that the affidavit of probable cause relied on reports that the property smelled of marijuana, which should not be considered evidence of unlawful activity after the passage of Pennsylvania's Medical Marijuana Act ("MMA"), 35 PA. CONS. STAT. ANN. §§ 10231.101-10231.2210. (See Doc. 40 at 4-9). He contends that without these olfactory accusations, the affidavit relies only on speculative and anonymous complaints about the property, some of which he views as stale, and therefore provides no substantial basis for a finding of probable cause. (See id. at 9-14). He then urges the court in the alternative to exclude evidence from the residence because the affidavit only justified a search of the trailer and greenhouses at the rear of the property. (See id. at 14-16).

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See U.S. CONST. AMEND. IV; Horton v. California, 496 U.S. 128, 133 (1990). To search a home, the constitutional default is that a warrant is required. See Payton v. New York, 445 U.S. 573, 586 & n.25 (1980) (citations omitted). For a search warrant to issue, a neutral magistrate must find, under the totality of the circumstances described in the affidavit, that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In reviewing an issuing judge's decision to authorize a warrant based upon an affidavit of probable cause, this court must give "great deference" to the issuing authority's assessment and is constrained to consider only whether the most reasonable, commonsense nontechnical reading of the affidavit provides a "substantial basis" for a finding of

3

probable cause. United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010); see also Gates, 462 U.S. at 236; United States v. Williams, 3 F.3d 69, 72 (1993).

We begin with Skouras's arguments that we should set-aside the allegations that the property smelled like marijuana when evaluating the warrant. Skouras contends that since the MMA has legalized the use of marijuana for certain individuals in Pennsylvania, the smell of that drug in a particular location within the Commonwealth is not itself evidence of illicit activity. (See Doc. 40 at 8-9). Our court of appeals held in United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006), that the smell of marijuana alone, if articulable and particularized, provides not only reasonable articulable suspicion for an investigatory stop, but also probable cause for a search—and it has reaffirmed that holding in two recent precedential opinions, United States v. Green, 897 F.3d 173, 186 (3d Cir. 2018), and United States v. Henley, 941 F.3d 646, 653 (3d. Cir. 2019). We are bound by these authorities and are unconvinced that contrary interpretations of the Pennsylvania Constitution by the Pennsylvania Supreme Court in the wake of the MMA, (see Doc. 40 at 6-9 (citing, *inter alia*, Commonwealth v. Barr, 266 A.3d 25 (Pa. 2021)), should change the result.

Whether a search is reasonable under the Fourth Amendment to the United States Constitution is a question of federal law that does not depend "on the law of the particular State in which the search occurs." California v. Greenwood, 486 U.S. 35, 43 (1988). And while Fourth Amendment analysis certainly depends on "our *societal* understanding" of privacy rights in relation to particular places or things, see Greenwood, 486 U.S. at 43 (emphasis in original) (citing Oliver v. United States,

4

466 U.S. 178; Rakas v. Illinois, 439 U.S. 128 143-44 & n.12 (1978), abrogated in part on other grounds by Minnesota v. Carter, 525 U.S. 83 (1993)), state law plays an important role only to the extent that "the laws of *all* states" provide "the jurisprudential background informing past and contemporary notions of 'reasonableness,'" see Christopher v. Nestlerode, 373 F. Supp. 2d 503, 514 (M.D. Pa. 2005) (Conner, J.) (emphasis in original) (citing, *inter alia*, Atwater v. City of Lago Vista, 532 U.S. 318, 340-45 (2001)), aff'd, 240 F. App'x 481 (3d Cir. 2007).  Skouras, however, does not mention state law other than Pennsylvania's MMA in his motion or supporting papers.  (See generally Doc. 40).  Moreover, Skouras has not argued that the odors described in the affidavit of probable cause were not articulable or particularized as defined by our court of appeals' binding precedents.  (See generally id.)  We conclude that the authorizing judge could properly rely on the smell-related allegations when assessing the existence of probable cause under the Fourth Amendment.[2]

Skouras next intimates that two reports of suspicious activity made in 2007 are stale and should accordingly have been excised from the authorizing judge's consideration.  (See Doc. 40 at 9 ¶¶ 1-2).[3]  The court will assume for purposes of our

---

[2] Other district courts within the Third Circuit have reached the same result. See United States v. Leonard, No. 21-CR-461, 2022 WL 2068251, at *5 (E.D. Pa. June 8, 2022) (citations omitted) (noting that marijuana is still proscribed by the federal Controlled Substances Act, a statute precedential to state law under the Supremacy Clause); United States v. Chapman, Nos. 21-CR-73, 21-CR-133, 2023 WL 4058927, at *13 (W.D. Pa. June 17, 2023) (same).

[3] The first two paragraphs of the list of complaints in Skouras's opening brief, are repetitious; both refer to the May 21, 2007 report of suspicious activity. (See Doc. 40 at 9 ¶¶ 1-2).  We assume that Skouras meant to list the July 13, 2007 suspicious activity report in the second paragraph.  (See Doc. 45-1 at 4).

analysis that these decade-and-a-half-old reports are stale; without them, the affidavit of probable cause would contain the following information.

- Detective Russell Schauer, III, has been a member of the Springettsbury Township Police Department for 18 years and a member of the York County Drug Task Force since May 2008. He has experience with narcotics investigations, including the use of confidential informants and electronic surveillance. He is also familiar with the procedures typically employed to unlawfully grow, package, and distribute marijuana.

- On June 7, 2020, Officer Helm spoke to a complainant who suspected that Skouras was growing marijuana, manufacturing methamphetamine, and selling those narcotics at his home, 1357 Canterbury Lane. The complainant reported significant vehicle traffic at the residence between 2:00 a.m. and 3:00 a.m. In addition, the witness saw Skouras transport multiple propane tanks to a camper parked in his back yard, which also contained a generator and multiple sets of solar panels.

- On December 27, 2020, Officer Himmelberger was patrolling Canterbury Lane at approximately 1:00 a.m. when he noticed two greenhouses in Skouras's backyard, which were illuminated by a purple light. He also saw several individuals walking in and out of a camper located near the greenhouses.

- On May 19, 2021, Officer Schrift was flagged down by a man who purported to be a neighbor of 1357 Canterbury Lane, though he did not provide his name. He reported that a consistent and strong odor of marijuana emanated from the residence and the greenhouses at its rear. He also reported a chemical smell coming from the trailer on the property, and that solar panels powered the greenhouses and the trailer.

- On July 1, 2021, Sergeant Thompson received a third complaint via online submission, detailing what the witness thought to be a drug deal at 1357 Canterbury Lane, which occurred on June 28, 2021. The witness observed Skouras exiting his residence to hand a black bag to the driver of a black BMW. The complaint also included a statement that 1357 Canterbury Lane had a well-known reputation for drug manufacturing and distribution.

- On December 31, 2021, a fourth confidential source notified Detective Schauer that the area surrounding 1357 Canterbury Lane smelled like marijuana. Detective Schauer then drove to the address, where he observed solar panels on the roof of the residence and in the backyard and saw that the windows of the residence were shaded so that the view into the residence from the street was obscured—which are, from Detective Schauer's experience, all signs of illicit narcotics activity.

- On January 4, 2022, Detective Schauer drove by 1357 Canterbury Lane and detected an odor of fresh (as opposed to burnt) marijuana. Detective Schauer ran the license plate information of two cars in the driveway, both of which were registered to George Skouras. The next day, Detective Schauer consulted Ray Markey of the Springettsbury Township Codes Enforcement, who confirmed that the solar panels at 1357 Canterbury Lane were installed without the proper permits.

- On January 6, 2022, Detective Schauer spoke with a fifth complainant, who suspected for the past three years that 1357 Canterbury Lane was used to sell narcotics. She confirmed that the property contained two greenhouses along with dozens of solar panels and consistently smelled of marijuana. She also observed frequent vehicle traffic at the residence at all times of day, and frequently saw Skouras making short trips to and from the residence via moped, which she believed were made to facilitate illicit transactions. She noted that the windows to the greenhouses were obscured by green bags. The night before providing her statement, the witness saw three cars—none of which she recognized as those of her neighbors—stop near 1357 Canterbury Lane for a minute or two before driving off.

- On January 11, 2022, Detective Schauer spoke with a sixth informant, who stated that Skouras purchased and gutted a trailer he kept in the backyard, which released a harsh chemical smell when opened. The informant noted that the greenhouses on the property are equipped with electricity, heat, and unique blue or pink lights, which remain on at all times. He also observed that the windows of the greenhouses were sometimes covered with opaque material, and that snow does not accumulate on the greenhouses.

- On January 13, 2022, Detective Schauer drove past 1357 Canterbury Lane, where he smelled a strong odor of fresh marijuana and observed pink lights illuminating the inside of the greenhouses in the backyard.

- Detective Schauer returned to 1357 Canterbury Lane on January 18, 2022, and once again smelled the odor of fresh marijuana emanating from the property.

(See Doc. 45-1 at 4-8).

We find that Detective Schauer's affidavit provides a substantial basis for a finding of probable cause to search the entire property, including the residence, even without the suspicious activity reports from 2007. The affidavit, as reconstructed by the court, contains ten relevant events. Six of these events—those

8

of June 7, 2020; May 19, 2021; July 1, 2021; December 31, 2021; January 6, 2022; and January 11, 2022—rely upon information provided by private citizens, while the remaining four—those of December 27, 2020; January 4, 2022; January 13, 2022; and January 18, 2022—describe observations made directly by the police.

The six private complaints provide significant evidence of probable cause. Skouras's intimations that each of the six tips described in the affidavit was "anonymous," (see Doc. 40 at 9-11), are misleading. To begin, Skouras correctly points out that the June 7, 2020, July 1, 2021, and January 11, 2022, complaints were provided by unidentified sources who did not, at least according to the affidavit, speak to the police in person. (See Doc. 45-1 at 4-6). But the remaining tips were either independently and immediately corroborated by the police or derived from sources who were not completely anonymous. (See id. at 4-8). Although the May 19, 2021, complainant did not identify himself by name, he spoke with a police officer in person, providing the officer an opportunity to assess his demeanor and veracity; he also stated that he was a neighbor of 1357 Canterbury Lane. (See id. at 5). Further, Detective Schauer independently corroborated the tip received on December 31, 2021, that same day. (See id.) And the January 6, 2022, complainant identified herself as Skouras's neighbor. (See id. at 5-6 (describing that complainant observed heavy vehicle traffic at 1357 Canterbury Lane and that she did not recognize the vehicles as those of her neighbors)).

Even anonymous reports contribute to a finding of probable cause because the reliability of informants, while relevant, comprises only *one part* of that common-sense determination. See Gates, 462 U.S. at 230. An issuing judge may

9

rely upon the statements of an informant so long as a "substantial basis for crediting" the informant's account exists.  See Stearn, 597 at 556 (quoting Gates, 462 U.S. at 245).  A "detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand" can meet that standard even where there is "some doubt as to an informant's motives."  See Gates, 462 U.S. at 234-35; see also id. at 241-42 (discussing weight independent police corroboration carries in evaluating anonymous tips and abandoning Aguilar-Spinelli test of probable cause, which required informant testimony to display both "veracity" and "basis of knowledge"); Stearn, 597 F.3d at 554-58 (emphasizing importance of police corroboration over informant credibility in post-Gates Fourth-Amendment jurisprudence).  Each of the three anonymous tips is based on first-hand observation and includes a detailed description of the property.  The reports of July 1, 2020, and January 11, 2022, also demonstrate a historical knowledge of the property based on the reported observation of distinct events at different times.  (See Doc. 45-1 at 4-8).  The three remaining tips were, as previously discussed, either immediately corroborated or came from an identifiable source.  (See id.)  Those six reports, in conjunction with independent police observation on four additional occasions, provided a substantial basis for the issuing judge to find probable cause.

    Moreover, we find that the affidavit, contrary to Skouras's contention, (see Doc. 40 at 14-16), contains sufficient information to justify a search of the residence.  The warrant, for one, particularly describes the residence and curtilage as within its scope.  (See Doc. 45-1 at 2). Police surveillance on December 27, 2020,

December 31, 2021, and January 4, 2022, also revealed a pattern of activity (namely, foot traffic to and from the camper in the backyard, and the residence having solar panels and blacked-out windows) that—in Detective Schauer's extensive experience—is consistent with an ongoing narcotics operation at the residence. (See id. at 4-5, 7-8). In addition, tips received on June 7, 2020, July 1, 2021, and January 6, 2022, described an unusual, consistent pattern of vehicle and foot traffic to and from the property, including the residence. (See id. at 4-6). This information is sufficient to provide a "substantial basis" for a finding of probable cause to search the residence.

Skouras last requests that we hold an evidentiary hearing. (See Doc. 39 (proposed order scheduling hearing on motion to suppress)). An evidentiary hearing on a suppression motion need only be convened to resolve issues of material fact. United States v. Hines, 628 F.3d 101, 105 (2010), abrogated in part on other grounds by Alleyne v. United States, 570 U.S. 99 (2013). As discussed *supra*, the warrant is supported by probable cause for the full scope of the search executed on January 20, 2022. Skouras does not identify a material factual dispute that would undermine our determination that the magisterial district judge had an adequate basis to conclude that the warrant was supported by probable cause. (See id.; see also generally Docs. 37, 40).

**IV.     Conclusion**

      We will deny Skouras's motion to suppress evidence.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER<br>
Christopher C. Conner<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated:     January 2, 2025